# WILLIAM KRAMER v. KANSAS CITY POWER & LIGHT COMPANY, Appellant.

### Division Two, December 22, 1925.

1. **PLEADING: Motion to Make Definite: Overruled: Waiver.** Defendant, by answering and going to trial, does not waive its right to be heard in the appellate court on the action of the trial court in overruling its motion to make an allegation of the petition more definite and certain. [*Per* WHITE, J.]

2. ————: **Cause of Action: Negligence: General and Specific Allegations: Lack of Particularity: Waiver.** An allegation in the petition of an injured lineman that the iron step attached to an electric light pole, which gave way when he stepped upon it and thereby he was caused to fall, was not driven into the pole far enough to maintain his weight, stated a cause of action in that particular. In an action founded on negligence it is not necessary to state the specific facts constituting the negligence; a general statement of facts is sufficient, particularly after verdict; and the filing of a motion to make more definite and certain is a concession that a cause of action is stated. [*Per* WHITE, J.]

3. ————: ————: ————: **General Allegation: Conclusion: Oral Objection.** In an action for personal injuries received by a lineman when the iron step on an electric light pole on which he was standing broke and he fell, an allegation that "defendant negligently caused said step to be driven and placed in said pole not far enough to make it reasonably safe and secure from breaking under a strain" and that "while he was so using said step it broke with him because of said negligence of the defendant and caused him
311 Mo. Sup.—24.

to fall and be injured," is the statement of a legal conclusion, and does not tender an issue of fact, as to what defendant did in respect to the step, nor what plaintiff claimed defendant should have done that was not done to make the step reasonably safe; and if it is necessary for plaintiff, in order to recover, to prove that the distance between the flange of the step and the edge of the pole was too great for safety, he must allege such fact, or such other fact as constitutes negligence, and if he fails to do so his legal conclusion tenders no issue, and an oral objection interposed at the beginning of the trial, without a motion to make more definite and certain, must be sustained, and will avail after verdict and will work a reversal upon appeal. [Per RAILEY, C.]

4. NEGLIGENCE: Cause of Action: Insecure Step: Proof: Conjectured Cause. Even if the petition allege, as a ground of negligence, that the distance between the flange of an iron step and the edge of the electric light pole into which it was driven was six inches, when it should have been only four and a half, it still is necessary to allege and prove that the plaintiff lineman, who climbed the pole and fell when the step broke, placed his foot on that part of the step outside the four and a half inches; and if plaintiff relies upon such excessive distance, as the cause of the step breaking and of his injury, a verdict in his favor cannot stand where there is no such allegation and no proof tending to sustain it. A cause of action cannot be sustained upon speculation or conjecture. [Per RAILEY, C., with whom a majority concur.]

Held, by WHITE, J., concurring, with whom a majority concur, that the allegation of the petition stating that the iron step on the side of the electric light pole, which gave way when the lineman stepped upon it and caused him to fall, was not driven into the pole far enough to maintain his weight, stated a cause of action in that particular; and that if the allegation was defective for lack of particularity the proper mode to raise the defect was by motion to make more definite and certain, and such motion having been filed and overruled defendant did not waive it by answering over and going to trial; but, nevertheless, the allegation is not sustained by evidence that a step extending four and a half inches from the pole is safe, while one extending five and a half inches is unsafe. If the motion had been sustained and plaintiff had amended his petition so as to allege that the particular negligence was a step projecting five and a half or six inches from the pole, he would not have stated a cause of action, or sustained it by showing that a step extending four and a half inches from the pole was safe, while one extending five and a half or six inches was unsafe, for the reason that an added inch in the extension

would increase the strain only twenty-five per cent, and the step, if two weak to stand that additional weight, was unfit for use at all.

5. **NEGLIGENCE: Electric Light Pole: Insecure Step.** If an iron step extending four and a half inches from the side of an electric light pole is safe for the use of a lineman climbing thereon, it is not negligence to maintain one extending five or six inches. The additional projection of one or one and a half inches cannot alone render it unsafe.

6. ————: **Pleading: Insecure Step on Electric Pole: Latent Defects: Corrosion and Rust.** An allegation that defendant negligently maintained an iron step on the side of an electric light pole for the use of its lineman "which was old, worn and rusty and because thereof was of insufficient strength for the use of linemen," and that defendant knew of such defects or by the exercise of reasonable care would have discovered them and replaced the step with a secure and safe one, but negligently failed to do so, and that because of such negligence the step broke when plaintiff stepped thereon and caused him to fall, is a statement of a cause of action; and where the plaintiff produces evidence that the step broke flush with the pole, and that on the part extending away from the pole were rust, corrosion and worn conditions, from which the jury may infer that the step broke because of such defective condition, rather than from hidden defects which would not have been discovered by reasonable inspection, there is substantial evidence to support the allegation, and the case is one for the consideration of the jury.

7. ————: **Contributory: Insecure Step: Inspection by Lineman: Question for Jury.** The rule of the company forbade a lineman to "climb poles without first testing them carefully, satisfying yourself that they are safe to climb." When plaintiff climbed a pole to repair wires, an iron step upon which he stepped broke and he fell. He was not employed as an inspector of the appliances used by him, but was only required to take notice and guard against those dangers which were obvious and open to observation. The weather was cold, it was snowing, and the step was covered with snow. *Held*, that he could not be non-suited for failure to inspect the step, and whether he was guilty of contributory negligence, that is, whether he exercised such care as an ordinarily prudent man would have exercised under the circumstances, was a question for the jury to determine.

Corpus Juris-Cyc. References: **Master and Servant.** 39 C. J., Section 1161, p. 923, n. 64; Section 1165, p. 931, n. 9; Section 1212, p. 996, n. 63; p. 997, n. 68; Section 1342, p. 1155, n. 10, 11; Section 1373, p. 1194, n. 35; Section 1402, p. 1220, n. 71; Section 1403, p. 1222, n. 88. **Pleading,** 31 Cyc. p. 51, n. 70; p. 65, n. 42 New; p. 209, n. 89; p. 727, n. 40; p. 752, n. 63; p. 753, n. 64. **Trial,** 38 Cyc. p. 1612, n. 14.

Appeal from Jackson Circuit Court.—*Hon. Allen C. Southern*, Judge.

REVERSED AND REMANDED.

*John H. Lucas, William C. Lucas* and *Ludwick Graves* for appellant.

(1)   The court erred in refusing to sustain the objection to the introduction of any testimony and in refusing to sustain the motion to make more definite and certain: (a)   The amended petition did not state facts sufficient to constitute a cause of action, but stated mere conclusions of the pleader.  Hollis v. Light & Power Co., 204 Mo. App. 313.   (b)   The motion to make more definite and certain should have been sustained.  Van Bibber v. Welborn Fruit Co., 234 S. W. 356; Shohoney v. Railroad, 223 Mo. 671; Sidway v. Land Co., 163 Mo. 375. (2)   The court erred in refusing to grant the demurrer to the evidence and the peremptory instruction.   (a) Under the pleadings and the evidence there was no actionable negligence against the appellant.   9 R. C. L. 1218, 1219; Flack v. Ry. Co., 285 Mo. 48; Milligan v. L. & P. Co., 264 S. W. 408; Howard v. Ry. Co., 173 Mo. 524; Roberts v. Tel. Co., 166 Mo. 370; Bohn v. Ry. Co., 106 Mo. 429; Braden v. Railroad Co., 174 Mo. App. 584; Miller v. Tel. Co., 141 Mo. App. 462; McGorty v. Tel. Co., 69 Conn. 635, 61 Am. St. 62; McIsaac v. Electric Co., 70 Am. St. 244; Lynch v. Traction Co., 21 L. R. A. (N. S.) 774; Sias v. Con. Lighting Co., 73 Vt. 35; Flood v. Western Union Tel. Co., 131 N. Y. 603.  (b)   Respondent assumed the risk.   Flack v. Ry. Co., 285 Mo. 50; Shelton v. Light, Power & Ice Co., 258 Mo. 534; Roberts v. Tel. Co., 166 Mo. 370; Howard v. Mo. Pac. Ry. Co., 173 Mo. 524; Epperson v. Cable Co., 155 Mo. 346; Scoffin v. Furniture Co., 184 Mo. App. 627; Braden v. Railroad, 174 Mo. App. 584; Miller v. Tel. Co., 141 Mo. App. 462; McIsaac v. Electric Co., 70 Am. St. 244; McGorty v. Tel. Co., 69 Conn. 635, 61 Am. St. 62; Lynch v. Trac-

tion Co., 21 L. R. A. (N. S.) 774; Sias v. Con. Lighting Co., 73 Vt. 35; Flood v. Western Union Tel. Co., 131 N. Y. 603; 9 R. C. L. 1218, 1219. (c) Respondent was guilty of contributory negligence as a matter of law. Flack v. Ry. Co., 285 Mo. 28; Roberts v. Tel. Co., 166 Mo. 370; McIsaac v. Electric Co., 70 Am. St. 244; McGorty v. Tel Co., 61 Am. St. 62; Little v. Hyde Park Elec Co., 191 Mass. 386. (d) Any defect in the pole step was a latent defect for which the appellant was not liable. Howard v. Railroad, 173 Mo. 524; Bohn v. Railroad, 106 Mo. 429; Cunningham v. Journal Co., 95 Mo. App. 47; Breen v. Cooperage Co., 50 Mo. App. 202; Moran v. Brown, 27 Mo. App. 487. (e) Respondent violated the rule of the appellant and the custom of linemen in failing to test the pole and steps. Biddlecom v. Nelson Grain Co., 178 S. W. 750; Junior v. Elec. Lt. & Pr. Co., 127 Mo. 79; Chenowith v. Sutherland, 148 S. W. 127; Yokum v. Lusk, 223 S. W. 56; McGorty v. Tel. Co., 69 Conn. 635.

*Clif Langsdale* for respondent.

(1) Appellant having answered over and gone to trial, cannot on appeal complain of alleged error in overruling its motion to make respondent's petition more definite and certain. Sperry v. Hurd, 185 S. W. 173; Burnett v. Hudson, 228 S. W. 462; Lewis v. Barnes, 220 S. W. 489. (2) Appellant's demurrer to the evidence was properly overruled; and its peremptory instruction was properly refused. (a) Under the pleadings and the evidence respondent made a case for the jury. Sissel v. Sherin, 268 S. W. 668; Foster v. Rys. Co., 235 S. W. 1074; Kinney v. Met. Rys. Co., 169 S. W. 26; Corby v. Tel. Co., 231 Mo. 417; State ex rel. St. Joseph v. Ellison, 223 S. W. 671. (b) Respondent did not assume the risk. Corby v. Tel. Co., 231 Mo. 417; State ex rel. St. Joseph v. Ellison, 223 S. W. 671. (c) Respondent was not guilty of contributory negligence. Corby v. Tel. Co., 231 Mo. 417; State ex rel. St. Joseph

v. Ellison, 223 S. W. 671. (d) The defect in the pole step which caused it to break was not a latent defect, but, under the evidence, was located where it could have been discovered by the appellant by the exercise of ordinary care for its employees' safety. (e) Respondent violated no rule of the appellant and no custom of linemen. There was no rule or custom shown the observance of which would have prevented respondent's fall. (3) The court committed no error in giving respondent's Instructions 1-P, 2-P and 3-P. Meeker v. E. L. & P. Co., 216 S. W. 923. (4) There was no error in the admission of testimony on the part of respondent. Kinney v. Metro. St. Rys. Co., 169 S. W. 26; Bailey v. Kansas City, 87 S. W. 1186; Foster v. Railways, 235 S. W. 1074; Lackey v. Railways, 231 S. W. 963.

RAILEY, C.—This case was tried under an amended petition filed on February 20, 1923.

(1) It alleges that defendant is a corporation engaged in distributing electrical current in Kansas City, Missouri; that in the prosecution of its business, it erected, owned and maintained wooden poles in said city for the purpose of carrying wires used to conduct said electrical current about said city, and more particularly a pole used for said purpose, erected and maintained on the east side of Oak Street, between Third and Fourth streets, in said city; that at all of said times plaintiff was in the employ of defendant as a lineman; that on or about April 3, 1920, while in the pursuit of his employment, he was ordered and directed by defendant to climb said pole; that while so climbing the same, and using one of the iron steps driven and placed in and maintained on said pole by defendant for the use and convenience of plaintiff and other workmen in climbing said pole, said step, which was old and rusty and not driven or placed far enough into said pole to maintain or bear the weight of plaintiff, broke and caused him to fall and sustain the injuries complained of. It is charged that defendant negligently caused said step to be driven and placed in said

pole not far enough to make it reasonably safe and secure from breaking under a strain, which the defendant knew, or by the exercise of ordinary care would have known that it would be put to by linemen in its employ in using said step to climb said pole; that defendant knew, or should have known, that for said reason it was not safe and secure, and that if it should break would cause the lineman to fall; that while using said step on or about the above date it broke, because of said negligence, and caused him to fall and sustain the injuries complained of herein.

(2) It further alleges, in substance, that appellant, with knowledge of the condition of said step, was guilty of negligence in failing to inform respondent of its condition.

(3) It charges, that said pole step was old, worn, rusty and of insufficient strength for the use of linemen; that defendant knew, or should have known, of its condition, in time before plaintiff's injury to have replaced same with a suitable step, or to have warned plaintiff of its unsafe condition.

(4) It alleges that appellant was negligent in respect to foregoing matters, and that plaintiff was injured by reason of said negligence.

(5) It alleges that appellant was guilty of negligence, which caused plaintiff's injury, in directing him to climb said pole, when it knew, or ought to have known, that said pole step was unsafe, etc.

The petition sets out the injuries complained of, which will be considered, if necessary, in the opinion.

The answer to said amended petition admits the incorporation of defendant, denies every other allegation in said petition, pleads assumption of risk and contributory negligence on the part of plaintiff in failing to observe and test the pole step in question.

The reply contains a denial of the new matter pleaded in said answer.

George Welday, a resident of Kansas City, Kansas, testified in behalf of respondent, by deposition, that on

April 3, 1920, he was employed by this appellant in Kansas City, Missouri, and knew the plaintiff, William Kramer; that he was present when plaintiff was injured, at Fourth and Oak streets, on above date; that he and plaintiff, with other members of the gang, went there to repair an arc wire that was broken down; that they looked over the job and concluded that they needed a span wire to splice the one on the pole; that he climbed the first pole north of Fourth Street on Oak Street, where Kramer fell; that Kramer followed him up the pole; that there were two arms on the pole; that when he (witness) got to the bottom arm he stopped, and plaintiff was right below him; that plaintiff stopped, and was told by witness to wait a minute; that he (witness) went on up through the bottom wires on the bottom arm to the top arm, and put his safety just below the top arm; that plaintiff waited there until witness got set; that he then stepped around to the south side of the pole to come up on that side and, as he placed his foot on a step, it gave way with him; that said pole is about fifty feet above the ground, and was a wooden pole; that it was equipped with iron steps, which commenced about twelve feet from the ground; that these steps were about eighteen inches apart on each side of the pole, north and south; that it was snowing, and there was snow on the pole and steps; that they were the regulation iron pole steps; that when Kramer started up, after the conversation with witness, he used the steps; that he was on the south side of the pole when the step gave way with him; that this step was possibly six feet from the bottom cross-arm; that he (plaintiff) put his left foot on the step that gave way; that witness at this time was at the top cross-arm, waiting for plaintiff, and was looking south; that he saw plaintiff put his foot on the step, and saw the latter give away with him; that plaintiff grabbed at the pole, but missed it and fell about ten feet, when he caught a broken wire hanging down from the top cross-arm; that when he got his full weight on it, the wire broke at the insulator and plaintiff fell to

the pavement; that plaintiff was then carried away in an ambulance; that he saw the step which broke with Kramer, lying there in the snow on the street, about seven feet from the pole; that the snow was probably an inch and a half or two inches deep; that they did not complete the work on the day of the accident; that he saw the pole two days thereafter, and examined it; that he climbed the pole up to where the iron step had broken off, and looked at the place; that part of the broken pole-step was in the pole, like it had been driven in; that the piece in there was flush with the pole; that is, it was even with the outside of the pole; that the pole seemed to be solid, and there was no depression around the piece of step that was still in the pole.

On cross-examination witness testified in substance that these were regulation iron pole steps; that they were in use by telephone companies and all companies that have poles use steps like these; that he and Kramer were there about ten minutes before the accident; and that both he and Kramer had on their climbers; that there was snow on the ground and the temperature was freezing at the time of the accident; that he (plaintiff) was using his climbers, and stepped on to the step which broke and let him fall to the ground.

On re-examination witness again testified that the break appeared to him as being flush with the pole.

Jess Stinson, a witness for plaintiff, found the broken step about six or eight feet from the pole where plaintiff fell, identified the same and it was marked as plaintiff's Exhibit 1. Witness measured Exhibit 1 and testified that it was 6¼ inches from the inside of the flange of said step to the point where it was broken off; that from the outside of the flange to the point where the step was broken off, it was a fraction over 6¾ inches; that he had been a lineman for about eighteen years, and continued as such until 1917 when he was hurt. Over the objection of defendant, witness was permitted to testify that it was customary to measure the distance that a step should be left outside of the pole by a hand

axe about 4½ inches wide. He was shown the balance of the step, marked Exhibit 2, and identified same as part of Exhibit 1.

J. R. Black, who was a lineman of thirty years' experience, testified, in substance, that he recalled the injury sustained by plaintiff on April 3, 1920; that on April 4th, following the accident, he went where it occurred, with Jess Stinson; that they found the broken step marked as plaintiff's Exhibit 1; that it had been worn, was rusty and had been in service a long time; that the condition of the end where it broke looked like it had been eaten up by rust; that it was smaller than when it was first put into the pole. Witness testified that he had observed the steps of different companies for whom he had worked; that on or about April 3, 1920, and prior thereto, in Kansas City, Missouri, and vicinity, there was a custom among linemen, persons and corporations, erecting steps and poles with reference to the distance, that the steps of similar material, size and character as the step in controversy, marked Exhibit 1, were driven into the pole, which was the size of a hand axe blade about 4½ inches in width.

On cross-examination, witness testified that this was the same type of steps that was in general use.

On re-examination he testified that Exhibit 2, which was part of the broken step taken out of the pole, was worn and rusty on the end; that this part of the step is just a fraction over two inches in length.

The plaintiff here offered in evidence, without objection, both exhibits, 1 and 2, showing the entire broken step.

Erastus Cooper testified, for plaintiff, substantially as follows: That he had been a lineman about twenty-five years in Kansas City, Missouri, and other places; that he had worked as lineman in fifteen or sixteen states and in Canada; that he was acquainted with the pole from which Kramer fell; that the steps on said pole are driven on the north and south sides; that he measured the distance from where the step went into the pole to

the ground, and found the distance to be thirty-two feet and ten inches; that during his experience as lineman, he has come in contact with pole steps of the character, make and size of which Exhibit 1 is a piece; that he has driven this kind of steps into poles, in Kansas City and vicinity; that he had seen other steps, which he did not drive, of this same type, size and material in poles, in Kansas City; that there was a regulation distance at which they drove these steps into poles; that the hand axe blade, which they generally used in this kind of work, was about four or four and a quarter inches. Witness placed exhibits one and two together, and gave it as his opinion that the step was bigger on the end than where it broke. He also testified that where the step broke it was worn down by rust.

On cross-examination he testified that he examined the pole that morning, and went up it; that he worked for defendant in 1917 and 1919. Exhibit 11 was shown witness by counsel for defendant, and he was asked if that was the kind of hand axe they used in Kansas City. He answered in the negative, and said that Exhibit 11 is a heavier hand axe than the one he formerly used; that the blade of Exhibit 11 was too long to measure with; that the hand axe which was formerly used was of the same shape, but not so heavy; that the blade was not so long. He further testified that he could not answer whether the broken piece of step indicated rust.

On re-examination, witness testified, that there was not enough of this step out of the pole to be measured by the broad hand axe.

Wm. Kramer, the plaintiff, testified, in substance, that he could not recall any of the facts relating to what occurred at the time and place of his accident, but his deposition taken on May 8, 1922, was offered in evidence by defendant, and will be referred to later.

The plaintiff rested and defendant's demurrer to his evidence was overruled.

The testimony of defendant tends to show that the pole where the step was driven in was solid, and not de-

cayed or rotten; that the broken part was in the pole so taut that it required a good deal of work to remove it; that the piece of step was in the pole just like it was driven there and was straight in; the step broke inside the pole from about one-half to three-quarters of an inch; that it was a standard iron step; that both pieces of the step measured nine inches from end to end, and a little less than eight and one-half inches from inside the flange of the step to the end of same; that the broken piece of step which remained in the pole measured two and one-eighth inches; that the pole where the step in controversy entered the pole, as shown by the line of corrosion on it, and as measured by the witnesses, was about one-half inch from the broken end to over an inch up on said Exhibit 1; that the step broke inside the pole, and that there was about three inches of the step inside the pole; that it was about 5½ inches from the inside of the flange to the side of the pole; that measurements of steps on poles belonging to the Light Company, Home Telephone Company and Bell Telephone Company, doing business in Kansas City, Missouri, indicated that the distance between the flange and pole varied from five to six inches, said measurements being taken of the steps from the inside of the flange to the side of the pole.

The plaintiff offered no evidence tending to show that the step in controversy, composed of Exhibits 1 and 2, when driven into the pole, was insufficient when placed there to sustain the weight of a man as large or larger than plaintiff. On the other hand, the undisputed testimony of Dr. Roy Cross, a chemist of eighteen years experience, in Kansas City, Missouri, who was engaged in maintaining testing laboratories, and was familiar with metalic substances, as well as the stresses and strains on metals, after examining Exhibits 1 and 2, which constituted the step in controversy, gave it as his opinion that the broken step was three-eighths of an inch in diameter across the broken space; that at the point where it was three-eighths of an inch in diameter, and considering the kind of material said step was made of;

unless there was a hidden defect in the metal itself, it would stand a direct slow pull of seven thousand pounds without breaking; that from an outside visible appearance of the step, at its smallest point, it was perfectly capable of holding a man of two hundred pounds or more; that the above is true if the man's weight be placed at the outside point of the step on the flange. He further testified that an examination of Exhibits 1 and 2 does not indicate that the step was unsafe.

The evidence of defendant tends to show that the ends of the step at the break were not rusty but, on the contrary, indicated a clean, new break; that the distance from the pole to the flange, as measured by defendant's hand axe in use on its line, was five and three-quarters inches.

The defendant offered in evidence Rule Fourteen, applicable to linemen on its system, which reads as follows:

"Do not climb poles without first testing them carefully, satisfying yourself that they are safe to climb. Never climb poles, pole tops, both on trolly and wood poles, ladders, scaffolds, trees, cross-arms or any other elevated structure without first assuring yourself that the above mentioned will hold your weight."

Defendant offered testimony tending to show that said Rule 14 was observed by employees, and its requirements complied with; that plaintiff, at the time of his injury, paid no attention to the steps on said pole and made no examination or test of the step in controversy.

The jury returned a verdict in favor of plaintiff for $35,000. Motions for a new trial and in arrest of judgment were filed. The court required plaintiff to remit $15,000 of said verdict, and left the judgment standing at $20,000. Thereupon the motions for a new trial and in arrest of judgment were overruled. The case was appealed by defendant in due form to this court.

The instructions, rulings of the court and such other matters as may be deemed important, will be considered in the opinion.

I.    Appellant charges the court with error in over-ruling its motion to require plaintiff to make his peti-tion more definite and certain.   Said motion asks:

"That the plaintiff be required in his petition where he states, 'caused said step to be driven and placed in said pole not far enough to make it reason-ably safe and secure from breaking,' to state what distance and to what extent said step should have been driven into said pole, and to what distance and to what extent said step was driven into said pole."

*Motion to Make Definite.*

This motion was overruled by the court, and as de-fendant answered and went to trial, respondent claims, that it waived its right to be heard in this court on said motion.

There has been considerable controversy from time to time in this State as to whether the defendant waived its right to be heard here, on the motion aforesaid.   We are of the opinion that the weight of authority is with respondent as to his contention in respect to this matter. [Cullen v. Atchison County, 268 S. W. l. c. 95; Reynolds v. Davis, 260 S. W. l. c. 996; Wilson Company v. Hart-ford Fire Ins. Co., 300 Mo. l. c. 38-9; Ford v. Rock Is-land Ry. Co., 280 Mo. l. c. 207; Crowl v. Am. Linseed Co., 255 Mo. l. c. 328; Burnett v. Hudson, 228 S. W. l. c. 463; Lewis v. Barnes, 220 S. W. 487; Sperry v. Hurd, 267 Mo. l. c. 639 and cases cited.]

II.   The defendant, however, at the commencement of the trial, interposed the following objection:

"The defendant objects to the introduction of any evidence, for the reason that the petition wholly fails to state a cause of action against the defendant, and nowhere charges actionable negligence, and is so indefinite and uncertain that it does not comply with the provisions of the law requiring a plain and concise statement of facts without unnecessary repetition."

*Oral Demurrer.*

This objection was overruled and an exception taken.

Section 1220, Revised Statutes 1919, provides that the petition shall contain "a plain and concise statement of the facts constituting a cause of action, without unnecessary repetition."

In the leading case of Pier v. Heinrichoffen, 52 Mo. 336, Judge Ewing, speaking for this court, in which all the members thereof concurred, said: "Facts, and not evidence, nor conclusions of law, must be distinctly stated. Every fact, which the plaintiff must prove to maintain his suit, is constitutive in the sense of the Code, and must be alleged."

In paragraph three of the amended petition, plaintiff sought to recover, under the following allegation:

"That the defendant negligently caused said step to be driven and placed in said pole not far enough to make it reasonably safe and secure from breaking under a strain; . . . that while he was so using said step on or about the said date it broke with him because of the said negligence of the defendant and caused him to fall and be injured."

The above charge, that defendant "negligently caused said step to be driven and placed in said pole not far enough to make it reasonably safe" is but the statement of a legal conclusion, and did not tender an issue of fact as to what defendant did in respect to said step, nor what plaintiff claimed the defendant should have done that was not done to make said step reasonably safe. If plaintiff intended to charge, that the step should not have been maintained with the distance between the pole and the inside of the flange of the step in excess of four and one-half inches, he should have so alleged in the petition, and charged defendant with negligence in maintaining said step at a greater length than 4½ inches; and alleged that by reason thereof, the step broke and caused plaintiff to fall, etc. In order that plaintiff might recover, on account of defendant's alleged negligence, it would be necessary to show that it maintained said step at a greater length than 4½ inches.

If, therefore, it was necessary for plaintiff to prove the above fact, before a recovery could be had on this issue, then said fact was constitutive in the sense of the Code, and should have been pleaded in order to state a cause of action. A legal conclusion of the above character tenders no issue of fact, and may be attacked collaterally at any stage of the proceeding, without resorting to a motion to make it more definite and certain. [Sec. 1220, R. S. 1919; Lewis v. James McMahon & Co., 271 S. W. l. c. 783 and cases cited; State ex rel. Home Sav. Ins. v. Lee, 288 Mo. l. c. 698; Musser v. Musser, 281 Mo. l. c. 660-1; State ex rel. v. Brewing Co., 270 Mo. l. c. 108; Darrow v. Briggs, 261 Mo. l. c. 278; Gibson v. Railroad, 225 Mo. l. c. 482 and fol.; Mallinckrodt Chem. Wks. v. Nemnich, 169 Mo. l. c. 397; Sidway v. Mo. Land & Livestock Co., 163 Mo. l. c. 372 and fol.]

III. Aside from the foregoing, even if the petition had alleged as a ground of negligence that defendant improperly left the distance between said pole and flange

Pleading and Proof.

of said step six inches, which rendered it dangerous and unsafe for use, when it would have been, as plaintiff contends, only 4½ inches, it would still be necessary, in order to sustain a recovery on this branch of the case, that the petition should allege, and the evidence show, that plaintiff placed his foot on that part of the step outside of the 4½ inches, claimed to be a proper distance. The petition, however, makes no such averment, nor is there any evidence in the record tending to show that plaintiff was thus injured. He was an experienced, first-class lineman, and was required by the rules of his company, in the performance of his work, to examine, at least that part of said step which was open to observation, and in plain view, before stepping upon it. He testified in his deposition, that he paid no attention to the step. The case was therefore submitted to the jury upon pure speculation and conjecture, in respect to said step extending too far out between the pole and flange of same. The burden

of proof was upon plaintiff to show, by substantial testimony that defendant's negligence in respect to above issue, caused the injuries complained of. This does not mean that a cause of action can be sustained upon either speculation or conjecture. [State v. Buckley, 274 S. W. 74; State v. Tallo, 308 Mo. 584; State v. Goodson, 299 Mo. 321; State v. Bowman, 294 Mo. 245; State v. Singleton, 294 Mo. 346; State v. Hollis, 284 Mo. 627; State v. Morney, 196 Mo. l. c. 49; Marlowe v. Kilgen, 252 S. W. l. c. 426 and cases cited; Pate v. Dumbauld, 298 Mo. 435; Perkins v. Wilcox, 294 Mo. 700; Van Bibber v. Swift & Co., 286 Mo. 317; Warner v. Ry. Co., 178 Mo. 125.]

IV. The plaintiff not only failed to state a good cause of action in his petition with respect to the alleged improper placement of said step, but the evidence produced at the trial signally failed to make out a case on this subject. The plaintiff examined several linemen of experience, who testified, over defendant's objection, with reference to a custom or regulation recognized in Kansas City, Missouri, among linemen, persons and corporations with reference to the distance that should be observed between the pole and flange of the step. As an illustration, one of said witnesses was asked, over the proper objection of defendant, the following:

*Insufficient Evidence.*

"Q. Mr. Stinson, I will ask you whether or not on or about April 3rd, 1920, and prior thereto, in Kansas City, Missouri, and vicinity, there was a custom among linemen and persons and corporations erecting steps and poles with reference to the distance that the steps of the same material, size and character as this step, Exhibit 1, was driven in the pole?"

The defendant objected to this question, because there is no custom pleaded in the petition nor an allegation of any violation of any alleged custom. This objection was overruled, and an exception saved. The witness answered that there was such a custom, and that the distance from the pole to the flange of the step was

311 Mo. Sup.—25.

measured by the blade of a hand axe, which would place said distance at 4½ inches.

Now let it be conceded that 4½ inches was a safe and proper distance between the pole and the inside of the flange of said step, is this any evidence of negligence on the part of defendant in maintaining said distance at five inches, 5¾ or even six inches? The defendant introduced a number of witnesses, who testified that the steps of various plants in Kansas City, Missouri, were maintained at a distance of 5, 5½ and 5¾ inches. An expert of long standing in dealing with this subject testified, without objection and without contradiction, that the step in controversy, when installed in the pole, was capable of standing a direct slow pull of seven thousand pounds without breaking; that from an outside visible appearance of the step at its smallest point, it was perfectly capable of holding a man of two hundred pounds or more, and this would be true if the man's weight were at the outside point of the step or on the flange. The plaintiff offered no countervailing testimony on this subject.

Without pleading a violation of any custom, without showing that the distance at which defendant maintained this step between the flange of same and the pole rendered it unsafe, and without any substantial evidence tending to establish negligence on this branch of the case, the jury were given a roaming commission, under plaintiff's instructions numbered 1-P and 2-P, given by the court over defendant's objection, to find for plaintiff on the foregoing issues, which were neither alleged in the petition nor shown by the testimony. Both of said instructions were clearly erroneous for the reasons aforesaid, and should not have been given to the jury in that form.

V. The fifth paragraph of the petition reads as follows:

"Plaintiff states that the defendant negligently maintained said step on and in said pole when said step was old, worn and rusty and because thereof of insuffi-

cient strength for the purpose for which it was main-
tained by the defendant; plaintiff states that
the defendant knew of said condition of said
step or by the exercise of ordinary care would
have so known and that because thereof it
might and would break with plaintiff and
cause him to fall and be injured, within a reasonable time
prior to plaintiff's fall, to have thereafter by the exer-
cise of ordinary care removed the said step or replaced
it with a sufficient one or warned plaintiff not to so use
said step; but that the defendant negligently failed so to
do. Plaintiff states that the said negligence of the de-
fendant caused plaintiff's fall herein complained of and
his consequent injuries.''

*Pleading: Latent Defects: Corrosion.*

We are of the opinion that the petition sufficiently
charges defendant with negligence in respect to the mat-
ters stated therein.

It is contended by appellant that the testimony of-
fered at the trial was insufficient to take the case to the
jury on the above issue.

It may be stated, in general terms, that it was the
duty of defendant to use such care and caution in in-
specting its poles and steps as an ordinarily careful and
competent person in that line of employment would use
in performing this duty. On the other hand, it was the
duty of respondent, under the law, as well as under the
rules and requirements of defendant, to exercise rea-
sonable care for his own protection in passing over said
step, and to guard against dangers, if any existed, which
were obvious or open to observation when using the same.

After hearing the oral arguments, reading the tes-
timony set out in the record, and considering the exhibits
left here for our inspection, we have reached the con-
clusion that this is an exceedingly close case on the mer-
its. There is, of course, no question about the step break-
ing with plaintiff and causing him to fall to the ground
below, but as to whether said step broke on account of
latent defects therein, not open to observation, and which
could not be ascertained by reasonable inspection, or

whether it broke from long use, rust and corrosion, under such circumstances as reasonable inspection would have disclosed to defendant, are questions not free from doubt. The plaintiff produced some evidence tending to show that said step broke at a place flush with the pole, and that outside of the pole there were indications of rust, corrosion and a worn condition of the step, from which the jury might have inferred that said step broke, by reason of the above conditions, rather than from hidden defects which could not have been discovered by reasonable inspection. We accordingly hold, that there was some substantial evidence offered by plaintiff tending to prove the foregoing charge of negligence and which presented a case for the consideration of the jury.

VI. The verdict in this case was for the extravagant sum of $35,000. The court required a *remittitur* of $15,000 and affirmed the judgment for $20,000. It Excessive Verdict. is doubtless true that plaintiff did receive some severe injuries, but on a careful examination of the testimony in respect to this matter, we think that, if plaintiff was entitled to recover at all, the judgment should not have been permitted to stand for more than $15,000.

VII. It is contended by defendant that plaintiff should have been non-suited for failing to inspect the step at the time and place of accident, as required by Rule 14; and that he was guilty of contributory negligence in failing to do so. The respondent was not employed as an inspector of appellant's appliances used by him, but was only required to take notice and guard against those dangers which were obvious or open to observation. The evidence is undisputed that the weather was cold, that it was snowing and this step was covered with snow. It was a question for the jury, as to whether plaintiff exercised such care as an ordinarily prudent person should have exercised under such circumstances.

VIII. On a retrial of the case, the plaintiff should be required, as provided in Section 1220, Revised Statutes 1919, to amend his petition so as to make it contain a plain and concise statement of the facts constituting his cause of action, without unnecessary repetition.

*Amended Petition.*

On account of the errors heretofore pointed out, the cause is reversed and remanded, to be proceeded with in accordance with the views heretofore expressed. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur. *White, J.,* concurs in separate opinion; *Blair, J.,* concurs, and also concurs in opinion of *White, J.; Walker, P. J.,* concurs.

WHITE, J. (concurring).—I. I believe the allegation of the petition in stating that the step, which gave way and caused the plaintiff to fall, was not driven into the pole far enough so that it could maintain the weight of the plaintiff, stated a cause of action in that particular. In an action founded on negligence it is not necessary to state the specific facts constituting the negligence; a general statement of facts is sufficient, particularly after verdict. [Mack v. Railroad, 77 Mo. 232; Schneider v. Railroad, 75 Mo. 295.] A general allegation of negligence is good unless it is attacked for want of being sufficiently definite. In such case, a motion to make more definite and certain is the proper remedy. It was said by Judge GRAVES in case of Sartin v. Hospital, 195 S. W. l. c. 1038, that the filing of a motion to make more specific is in effect a concession that a cause of action is stated in the petition. The defendant in this case did not demur, evidently believing that a cause of action was stated. I think, undoubtedly, if the defendant had failed to file a motion to make more specific and definite, it would have waived that defect—the lack of par-

*General Allegation.*

ticularity. [Phillips v. Railway, 226 S. W. l. c. 865; Lynch v. Railway, 111 Mo. l. c. 604.] The general rule is that a petition which states a cause of action, though imperfectly, is good against a general objection. [Anderson v. Lusk, 202 S. W. l. c. 306.]

In this case the petition stated simply that the step was not driven far enough in to be safe, without stating the length of the step or the distance which it was driven into the pole. That is, a general statement, imperfect because lacking particularity, is good until attacked for that reason.

II. It is true the authorities are in conflict as to whether answering over after a motion directed at the petition is overruled, waives the defect. Among the cases cited in support of that position, I think none of them was where a motion to make more specific was overruled. I think it more nearly comes under the rule announced in the case of Bailey v. Kansas City, 189 Mo. l. c. 503, and in the case of Car Manufacturing Company v. Rolling Mill Co., 285 Mo. l. c. 694-698, where the subject is discussed at length. It appears to me a harsh rule to hold that a defendant in such case would waive his right to claim an error where he made the point in the only way he could, and at the earliest moment he could.

*Waiver.*

III. However, I think the evidence fails to show any negligence in support of that particular allegation. Manifestly a step would not be driven into the pole far enough to make it safe if the weight of a man would cause it to pull out. Otherwise, it is difficult to see why it would not be far enough, or that a difference between 4½ and 5½ inches in that part of the step extending from the pole would be sufficient upon which to found an action for negligence.

*Insufficient Evidence.*

It is a law of mechanics that the pressure on a fulcrum is in direct proportion to the length of the lever

to which the weight is applied. An added inch to the external projection of the step in this case would increase the strain only twenty-five per cent. If the steps were too weak to stand that much additional weight they were unfit for use at all. For they would be likely to break if a very heavy man with a heavy equipment should use them, or if a lineman inadvertently should place his foot and weight on the extreme end of the step instead of against the pole. So, to say that a step extending five inches from the pole was unsafe, in that it was liable to break is to say that it was unsafe to use. If the motion had been sustained and if the plaintiff had amended so as to plead the specific facts shown by the evidence, he probably would have failed to state a cause of action, because he could not state a reason why five inches of projection was unsafe if four inches was safe.

There was no evidence to show that the steps used had that inherent weakness. Therefore, I think the evidence did not sustain that particular allegation of negligence, and that issue should not have been submitted to the jury. Therefore, I concur in reversing the judgment and remanding the cause. *Blair, J.*, concurs.