THE STATE EX REL. WALLACE HOPKINS v. CHARLES H. DAUES ET AL., Judges of St. Louis Court of Appeals.—6 S. W. (2d) 893.

Court en Banc, April 9, 1928.

Louis J. Robinson and Earl M. Pirkey for relator.

*Watts & Gentry* and *Arnot L. Sheppard* for respondent.

*Louis J. Robinson* and *Earl M. Pirkey* for relator in reply.

BLAIR, J.—This is an original proceeding in certiorari, whereby relator seeks to quash the opinion of the St. Louis Court of Appeals in the case of Wallace Hopkins v. American Car & Foundry Company, decided by respondents on June 7, 1927, because of alleged conflict between said opinion and controlling decisions of this court. Our writ issued and respondents have certified up the record before them. The case has been briefed and argued and thus is before us for decision.

It appears from the opinion of respondents that relator as plaintiff filed his petition in the Circuit Court of the City of St. Louis, praying damages because of injuries sustained by him through alleged negligence of the defendant. He recovered judgment for $1750. After moving unsuccessfully for a new trial, defendant appealed. Respondents reversed the judgment of the trial court and remanded the cause for a new trial.

The facts in the case are not involved in this proceeding. It suffices to say that the evidence tended to prove that relator was injured by the collapsing of a pile of pieces of steel, which were piled in an insecure manner by another employee, under the direction of defendant's foreman. Respondents held that a case was made for the jury on the facts in evidence. They held, however, that the petition, though unchallenged until after verdict, alleged mere legal conclusions as to the negligence of defendant and did not allege the facts showing such negligence, and that the petition was so fatally defective and insufficient for that reason that it could be attacked after verdict for the first time.

Respondents' opinion quoted the petition and stated the issues in the circuit court as follows:

"The place where plaintiff was so working was not reasonably safe for him by reason of the fact that said pile was insecure and there was probable danger of it falling on and injuring plaintiff, and defendant knew, or by the exercise of ordinary care would have known, that said pile was insecure, and of the danger of injury to plaintiff therefrom before plaintiff was injured, as hereinafter mentioned, and in time to have, by the exercise of ordinary care, remedied said condition before plaintiff was injured as aforesaid and thereby averted the injuries to plaintiff, but defendant negligently failed to do so, *and negligently piled said pile in an insecure manner;* and after defendant knew, or by the exercise of ordinary care would

have known, that said pile was insecure, and of the danger of injury to plaintiff therefrom, defendant negligently required plaintiff to be and work near said pile, all without protection or notice of any kind to him (italics ours)" (respondents').

"The answer is a general denial.

"Appellant's assignment of errors are to the effect, first, that the court erred in refusing the demurrers requested by appellant at the close of plaintiff's case, and again at the close of the whole case, and for the reason that the petition wholly failed to state facts sufficient to constitute a cause of action, and because the undisputed evidence shows that the proximate cause of the falling of the pile of iron was either conjectural or was the result of the act of a fellow-servant. And under the latter assignment appellant's counsel say in their brief: 'Frankly, appellant considers that the evidence showed that the proximate cause was the negligence of a fellow-servant.'"

Omitting the customary marks, we quote from respondents' opinion as follows:

But a more difficult question arises, and that is as to the petition itself. We have set out above the charge of negligence in the petition. Does same allege facts sufficient to charge an unsafe place to work? In determining the sufficiency of this petition it is insisted by appellant that two cases of the Supreme Court, one from each division, squarely hold the petition bad. The respondent denies this and relies on a case from that court en banc. We will lay these cases side by side to determine the effect of these decisions as we understand them. Of course, if the case en banc is decisive, we must follow it as against the divisional opinions. [State ex rel. v. Reynolds, 213 S. W. 782.]

In the case of Sabol v. Cooperage Co., 282 S. W. 425, decided by the Supreme Court, Division One, in October, 1925, and in which a motion to transfer to Court en Banc was overruled, the court had under review a petition drawn by the same counsel as appear for plaintiff in this case, and in which the language of the petition is almost exactly as here, except as to the portion italicized by us. The petition there charged that the place at which plaintiff was working was not reasonably safe "by reason of said pile of material being insecure so that there was probable danger of it falling on and injuring plaintiff, and that defendant knew, or by the exercise of ordinary care would have known, that said pile was as aforesaid insecure and there was probable danger of it falling on and injuring plaintiff, etc."

There, too, there was a general denial, and there, as here, appellant assigned error in denying a directed verdict on the ground as here, that the petition did not state a cause of action. There the court said of the petition:

"Reference to plaintiff's petition herein discloses that the gravamen of the charge of negligence therein stated (whether it be termed a general or specific allegation of negligence) in that:

" 'The place where plaintiff was working was not reasonably safe for said work plaintiff was as aforesaid engaged in by reason of said pile of material being insecure so that there was probable danger of it falling on and injuring plaintiff, and defendant knew or by the exercise of ordinary care would have known that said pile was as aforesaid insecure and there was probable danger of it falling on and injuring plaintiff . . . in time to have by the exercise of ordinary care remedied said condition before plaintiff was injured, but it negligently failed to do so, and . . . defendant negligently required plaintiff to work and be at and about said pile, all without protection or notice of any kind to him.'

"The word 'insecure' is defined as meaning 'unsafe' and therefore 'dangerous.' [Century and Webster's Dictionaries.] A petition containing like or similar allegations was considered by Division Two of this court in Zasemowich v. Manufacturing Co. (Mo. Sup.), 213 S. W. 799. There the petition charged the duty of defendant to furnish plaintiff with a reasonably safe place to work and reasonably safe appliances with which to work, and that certain horizontal iron rollers in which plaintiff was injured 'were so placed as were dangerous to persons employed in said manufacturing and mechanical establishment.' Said that division of this court (l. c. 802):

" 'The petition neither alleges, nor does the evidence prove, that defendant failed to furnish plaintiff a reasonably safe place to work. He had been performing the same duty, in the same manner, with the same machinery, six or seven times a day, for four or five months, without complaint or accident. Defendant's evidence to the effect that the machine was in good condition is uncontradicted. The general averment that said iron rollers were dangerous to persons employed in said establishment is insufficient to charge negligent construction or maintenance. It amounts simply to the statements of a legal conclusion, and tenders no issue of fact (citing authorities). The averment that the rollers were so placed as to become dangerous to employees working in the plant is not tantamount to an allegation that the machinery was negligently constructed, nor that it was improperly maintained.'

"But, regardless of the question whether or not plaintiff's petition herein states a cause of action upon which a valid judgment may be predicated, nevertheless, we believe that plaintiff has failed to prove any actionable negligence on the part of defendant, or that such actionable negligence was the proximate cause of his injuries."

It is said by respondent's counsel that the Sabol case does not decide that the petition was bad, because the court said, regardless of the petition, nevertheless there was a failure of proof. And counsel says that what was said about the petition should be treated as *obiter*. There may be some question as to whether, strictly speaking, this language is or is not *obiter*. But it cannot be doubted that the court took the view that the petition did not state a cause of action, for it assigns clearly and distinctly its reasons therefor, declaring that such petition stated a mere conclusion.

Neither side attempts to make a distinction in the petition at bar from the petition in the Sabol case. In the Sabol case there was the allegation that plaintiff was required to work near a pile of material "which was insecure so that there was danger of it falling," and that defendant knew this, or should have known it. The court held that such charge was a mere conclusion which tendered no issue of fact. In our case, the petition is almost a rescript in that respect, but then sets out that defendant "negligently piled said pile in an insecure manner."

The other case from Division Two relied upon by appellant is the Zasemowich case, cited and quoted from in the Sabol case. There, it will be seen, the petition in fact does not rely upon the charge of an unsafe place to work. The averment pertinent to this decision is that certain machinery was so placed as to become dangerous. The court said that such averment is not tantamount to an allegation that the machinery was negligently constructed or maintained. So, then, if it had been alleged that the faulty construction of the machinery made it unsafe, the petition would have been viewed differently, provided it was sufficiently alleged as we will point out later.

Now, as to the case of Geninazza v. Leonori Auction & Storage Co., 252 S. W. 417, en Banc, upon which respondent relies. There the court was divided on the opinion to such extent that but two of the judges concurred in the entire opinion. That case really turned upon another angle entirely, and those reasons are given in paragraphs six and seven of the opinion in which a majority of the court concurred. The principle relied upon by respondent is contained in paragraph five (three) of the opinion, which quotes Wallower v. Webb City, 171 Mo. App. 214, 222, 156 S. W. 48, 50, where it is held "that a general plea of negligence, whether in the petition or answer, is sufficient without specifying the particular acts, unless objected to by motion or otherwise before trial."

These are the three cases about which the battle is drawn by opposing counsel. We have found a later case, Kramer v. Power & Light Co., 311 Mo. 369, 279 S. W. 43, decided December 22, 1925, which we think leaves us no escape from holding the instant petition

to be insufficient. In the Kramer case the petition alleged that "defendant negligently caused said step to be driven and placed in said pole not far enough to make it reasonably safe and secure from breaking under strain," and that "while he was so using said step it broke with him because of said negligence of defendant, etc." The court there said this was a mere statement of a legal conclusion and tendered no issue of fact as to what defendant did in respect to the step nor what plaintiff claimed defendant should have done to make same safe. He should have alleged, said the court, that the distance was too great between flanges or other facts as constituted negligence.

Now, under the Sabol and Zasemowich cases, the instant petition is undoubtedly bad unless the italicized portion cures it. If that clause is intended as a separate allegation of negligence it cannot be held good, but we will consider same as a part of the charge of an unsafe place to work. Does this, then, make the petition good? We confess we so concluded until we read the Kramer case, and it is our duty to follow the Supreme Court whither it leads. In the Kramer case it is pointedly held that the petition must set out how the step was defective; what was its defect, and what should have been done to make it safe. A reading of that case will clearly indicate what must be contained in such petition to take it out of the realm of legal conclusions. In the instant case, it is alleged that the pile was insecure. So far, it is clearly a stated conclusion, then it adds that defendant negligently "piled said pile in an insecure manner." The evidence is to the effect that the bars were piled without interlocking same and "were piled improperly." Then if the place was insecure, it doubtless was so because defendant piled the iron bars in a pile or stack without interlocking the bars; if properly piled, that is, if piled so as to catch the parts together, or interlock, the pile would be safe. This is not pleaded, and under the cases above cited, and most especially the latest case, the Kramer case, this seems to be necessary to constitute a sufficient statement of facts. In other words, it is not enough to plead that the pile was insecure, or even piled insecurely, but some allegation of the facts of its insecurity must be pleaded. And this attack may now be made under the present record because the Kramer case, at page 384, holds that "a legal conclusion of the above character tenders no issue of fact, and may be attacked collaterally at any stage of the proceeding, without resorting to a motion to make it more definite and certain."

So we are constrained to hold the petition to be insufficient. Other matters complained of need not be discussed, as same will not likely occur on retrial, if there be one.

The foregoing sets forth all that respondents said concerning the insufficiency of the petition. We quote it all because that appears to

be the fairest way to present respondents' view-point. Respondents based their conclusion that the petition was fatally defective upon Sabol v. Cooperage Co., 313 Mo. 527, 282 S. W. 425; Zasemowich v. American Manufacturing Co., 213 S. W. (Mo.) 799, and Kramer v. Power Company, 311 Mo. 369, 279 S. W. 43.

Respondents appear to have understood correctly the ruling of Division One in the Sabol case. We do not think that holding can properly be regarded as *obiter*. The Sabol case appears to be in full harmony with the Zasemowich case, upon which it purports to be based. Respondents followed those cases. If they are the latest controlling decisions of this court, they were justified in following them.

There can be no question about the correctness of relator's contention that a decision of the Court en Banc is controlling, not only upon the appellate and all inferior courts, but upon the divisions of the Supreme Court as well. All inferior courts are bound to follow the latest controlling decision of this court. Although the decision of a division of the court upon a given question is later in point of time than a decision of the Court en Banc upon the same question, the decision of the Court en Banc is nevertheless the controlling decision. If there is conflict between the later divisional opinion and the earlier decision of the Court en Banc, it is the duty of all inferior courts, including the divisions of the Supreme Court itself, to follow the decision of the Supreme Court en Banc. [State ex rel. United Railways Co. v. Reynolds, 278 Mo. 554, 213 S. W. 782; State ex rel. North Kansas City Development Co. v. Ellison, 222 S. W. (Mo.) 783.]

The Geninazza case by the Court en Banc was controlling upon respondents rather than the later divisional opinions, unless respondents are correct in their contention that the Geninazza case is not to be regarded as controlling, because a majority of the court did not expressly concur in the particular ruling therein relied upon by relator in this case. The opinion was written by HIGBEE, C. The particular point is discussed and decided in paragraph 3 of that opinion. Two of the judges en Banc concurred *in toto;* two concurred in paragraphs six and seven and the result, and two others concurred only in the result, with one judge dissenting. The judges who only concurred in paragraphs six and seven manifestly did not concur in paragraph three, because they expressly excluded that paragraph from their concurrence. The two judges who merely concurred in the result cannot be said to have concurred in any particular part of the opinion, except that they gave their consent to the result, which was the affirmance of the judgment of the trial court.

In speaking of a similar situation in State ex rel. Columbia National Bank v. Davis, 314 Mo. 373, 284 S. W. 464, the Court en Banc, speaking through the writer of this opinion, said:

"The opinion of Judge FARIS announced no controlling authority on the question, because the opinion received only the concurrence of the writer thereof and of GRAVES, C. J., and WALKER, J. WOODSON, J., dissented, and filed a dissenting opinion in which he reached the same result, but for different reasons. BOND, BLAIR and WILLIAMS, JJ., merely concurred in the result reached in the opinion of FARIS, J. The judges who merely concurred in the result evidently did not agree with everything Judge FARIS said, or they would have concurred in the opinion."

We are constrained to hold that the Geninazza case did not authoritatively rule "that a general plea of negligence, whether in the petition or answer, is sufficient without specifying the particular acts, unless objected to by motion or otherwise before trial." Six of the seven judges agreed upon the judgment to be rendered, to-wit, that of affirmance. Only paragraphs six and seven of the opinion were expressly concurred in by a majority of the court and only those paragraphs can be said to be the controlling opinion of the Court en Banc. The opinion of one judge, or of any number of judges less than a majority of the court, cannot be said to be the opinion of the court. [Anderson v. Sutton, 293 S. W. (Mo.) 770, l. c. 773.]

But we think respondents have misconceived the holding of Division Two in Kramer v. Power Company, supra. The views of this division upon the sufficiency of the allegations of the petition in that case are expressed in the separate concurring opinion of WHITE, J., and not in the opinion written by RAILEY, C., which respondents seem to have accepted as the decision of the court. WHITE, J., said:

"I believe the allegation of the petition in stating that the step, which gave way and caused the plaintiff to fall, was not driven into the pole far enough so that it could maintain the weight of the plaintiff, stated a cause of action in that particular. In an action founded on negligence it is not necessary to state the specific facts constituting the negligence; a general statement of facts is sufficient, particularly after verdict. [Mack v. Railroad, 77 Mo. 232; Schneider v. Railroad, 75 Mo. 295.] A general allegation of negligence is good unless it is attacked for want of being sufficiently definite. In such case, a motion to make more definite and certain is the proper remedy. It was said by Judge GRAVES in case of Sartin v. Hospital, 195 S. W. l. c. 1038, that the filing of a motion to make more specific is in effect a concession that a cause of action is stated in the petition. The defendant in this case did not demur, evidently believing that a cause of action was stated. I think, undoubtedly, if the defendant had failed to file a motion to make more specific and definite, it would have waived that defect—the lack of particularity. [Phillips v. Railway, 226 S. W. l. c. 865; Lynch v. Railway, 111 Mo. l. c. 604.] The general rule is that a petition which states a cause of action,

though imperfectly, is good against a general objection. [Anderson v. Lusk, 202 S. W. 1. c. 306.]

"In this case the petition stated that as the step was not driven far enough in to be safe, without stating the length of the step or the distance which it was driven into the pole. That is, a general statement, imperfect because lacking particularity, is good until attacked for that reason."

This pronouncement is directly contrary to that of our learned commissioner upon the point as found in Paragraph II of his opinion. The opinion of WHITE, J., concurred in by the writer of the present opinion, constituted the authoritative ruling of Division Two of this court upon the point. The published opinion notes the writer as concurring in Judge RAILEY's opinion and also concurring in Judge WHITE's opinion. This was probably due to an evident misunderstanding by Judge RAILEY of the writer's vote upon the two opinions. The correct marking is shown by the records in the clerk's office, from which we quote as follows: "25108—William Kramer, Resp., v. Kansas City Power & Light Co., App. Reversed and remanded. WALKER, P. J., concurs; WHITE, J., concurs in separate opinion; BLAIR, J., concurs in result and in opinion of WHITE, J."

The separate concurring opinion of WHITE, J., in Kramer v. Power Company, supra, was the opinion of the court upon the sufficiency of the allegation of negligence contained in the petition. The rule was there laid down that "in an action founded on negligence it is not necessary to state the specific facts constituting the negligence; a general statement of facts is sufficient, particularly after verdict (citing cases). A general allegation of negligence is good unless it is attacked for want of being sufficiently definite."

The Kramer case was by Division Two. The Sabol case was by Division One. Each was the pronouncement of a court of equal dignity and authority and each opinion was equally binding upon respondents, if they were of the same date. But the latest decision in point of time was the one which respondents were bound to follow, in the absence of an authoritative expression from the Court en Banc. We have already held that the Geninazza case did not constitute such authoritative ruling. While the Sabol case appears in the 282 S. W. (page 425) and the Kramer case appears in the 279 S. W. (page 43), it appears that the Sabol case was decided October 9, 1925, while the Kramer case was decided December 22, 1925. The publication of the Sabol case was perhaps delayed by the filing and disposition of the numerous motions noted at the beginning of the case as reported in the Southwestern Reporter.

The rule announced by WHITE, J., in Kramer v. Power Company, supra, appears to be in harmony with the prior opinions of the court cited therein. In addition to Ehrlich v. Mittelberg, 299 Mo. 284,

252 S. W. 671, relied on by relator, we find the rule similarly stated in Simpson v. Wells, 292 Mo. 310, 237 S. W. 520; Winn v. Railroad, 245 Mo. 406, 151 S. W. 98, and other cases. These cases announce the correct rule that a general charge of negligence in a petition or answer is sufficient unless such pleading is properly assailed before verdict for want of definiteness. Such an allegation is sufficient when attacked after verdict for the first time. Such is the rule declared in the separate concurring opinion of WHITE, J., in the Kramer case and that separate concurring opinion announced the controlling opinion of the court upon that point. That case constituted the latest controlling opinion of the Supreme Court when respondents decided the case of Hopkins v. American Car & Foundry Co. Their opinion is in conflict with the Kramer case and must be quashed. It is so ordered. All concur, except *Graves, J.,* absent.